**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

VASILE CIOCAN,                              )
                                            )
                   Petitioner,              )
                                            )          Criminal Nos. 07-182, 07-398
            vs.                             )          Civil Nos. 10-175, 10-176
                                            )          Judge Nora Barry Fischer
UNITED STATES OF AMERICA,                   )
                                            )
                   Respondent.              )
                                            )

## MEMORANDUM OPINION

### I.      Introduction

        This matter is before the Court on a Motion to Vacate, Set Aside or Correct Sentence under

28 U.S.C. § 2255 filed by *pro se* Petitioner Vasile Ciocan.  (Criminal No. 07-182, Docket No. 123;

Criminal No. 07-398, Docket No. 27). Petitioner claims that his sentence should be vacated because

his counsel was ineffective, and that the Court erred at sentencing by failing to award him downward

departures for extraordinary remorse and his pretrial conditions.  (*Id.*).  The Government filed a

Motion to Dismiss the Petitioner's Motion on the basis that he waived his right to file a motion under

28 U.S.C. § 2255 in a plea agreement with the Government.  (Criminal No. 07-182, Docket No. 128;

Criminal No. 07-398, Docket No. 32).[1] Based on the following, the valid waiver in Petitioner's plea

agreement will be enforced; therefore, the Government's motion is GRANTED, and Petitioner's

motion is DENIED, as moot.

### II.     Factual Background and Procedural History

        On May 8, 2007, a federal grand jury returned a three-count indictment against Petitioner at

---

[1]      In the interest of simplicity, hereinafter the Court will refer solely to the docket entries related to Petitioner's motion and the Government's motion at Criminal No. 07-182, although both motions were filed at both criminal numbers 07-182 and 07-398.

Criminal No. 07-182. (Docket No. 25). The indictment charged him with conspiracy in violation of 18 U.S.C. § 371, bank fraud in violation of 18 U.S.C. § 1344(1), and aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). (*Id.*). This indictment also included forfeiture allegations against Petitioner. (*Id.*). On November 13, 2007, Petitioner and the Government filed a consent to transfer Petitioner's case at Criminal No. 07-360 in the United States District Court for the Northern District of Ohio to this Court for plea and sentencing, where it was assigned Criminal No. 07-398. (Criminal No. 07-398, Docket No. 1). In that case, the one-count indictment charged Petitioner with access device fraud in violation of 18 U.S.C. § 1029(a)(3). (*Id.*; Docket No. 1-2).

Thereafter, on December 7, 2007, Petitioner pled guilty to Counts Two and Three of the indictment at Criminal No. 07-182 and to Count One of the indictment at Criminal No. 07-398, pursuant to a written plea agreement with the Government. (Docket Nos. 59, 60; *see also Transcript of Change of Plea Hearing*, Docket No. 129). The Government agreed to move to dismiss Count One of Criminal No. 07-182. (Docket No. 60). In addition to Petitioner's guilty plea to Counts Two and Three at Criminal No. 07-182 and Count One at Criminal No. 07-398, the written plea agreement required him to "acknowledge[] responsibility for the conduct charged in Count One of the Indictment at Criminal No. 07-182," pay a special assessment to the Clerk of Court, waive former jeopardy or double jeopardy claims, pay mandatory restitution, and forfeit his right to certain property listed therein (Docket Nos. 60, 60-1). He also agreed to waive the right to initiate post-conviction proceedings challenging his sentence. Specifically, the plea agreement provides that:

> Vasile Ciocan waives the right to take a direct appeal from his conviction or sentence, at either Criminal No. 07-360 or Criminal No. 07-182, under 28 U.S.C. § 1291 or 18 U.S.C. § 3742, subject to the following exceptions:
>
> > (a) If the United States appeals from the sentence, Vasile Ciocan may take a direct appeal from the sentence.

2

> (b) If (1) the sentence exceeds the applicable statutory limits set forth in the United States Code, or (2) the sentence unreasonably exceeds the guideline range determined by the Court under the Sentencing Guidelines, Vasile Ciocan may take a direct appeal from the sentence.
>
> Vasile Ciocan further waives the right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence.

(Docket No. 60 at ¶ A. 7).  The plea agreement concludes, stating that "[t]his letter sets forth the full and complete terms and conditions of the agreement between Vasile Ciocan and the United States Attorney for the Western District of Pennsylvania, and there are no other agreements, promises, terms or conditions, express or implied."  (Docket No. 60 at 5).  Further, Petitioner asserted that "I have received this letter from my attorney, William Schmalzreid, Esquire, have read it and discussed it with him, and I hereby accept it and acknowledge that it fully sets forth my agreement with the Office of the United States Attorney for the Western District of Pennsylvania.  I affirm that there have been no additional promises or representations made to me by any agents or officials of the United States in connection with this matter."  (*Id.* at 5-6).  The agreement is executed by Vasile Ciocan on October 12, 2007, and signed as witnessed by: William Schmalzried, Esquire, Counsel for Vasile Ciocan.  (*Id.* at 6).

Prior to sentencing, Petitioner, through counsel, set forth numerous factual objections to the presentence investigation report as well as objections affecting Petitioner's total advisory offense level and criminal history, which, in turn, arguably affected his advisory guideline range. (Docket No. 78). The Court issued its Tentative Findings and Rulings on April 4, 2008, sustaining certain of Petitioner's factual objections but overruling others.  (Docket No. 81).  Accordingly, the Court calculated Petitioner's total offense level as 13, his criminal history category as I, and the applicable

advisory guidelines range as 12 to 18 months imprisonment. (*Id*. at ¶ IV.1).

On April 15, 2008, the Court held a sentencing hearing. As all of Petitioner's prior convictions had occurred in Canada, the Government moved for an upward departure under U.S.S.G. § 4A1.3(a)(2)(A), which provides that foreign convictions may be considered in sentencing if a defendant's criminal history is substantially underrepresented. The Court granted the motion and increased Petitioner's criminal history category to V, which changed the guidelines range to 30 to 37 months. (*See* Docket No. 84). At Criminal No. 07-182, the Court sentenced Petitioner to 37 months imprisonment at Count Two and added 24 months imprisonment at Count Three, said terms to be served consecutively. (Docket No. 85). The Court then sentenced Petitioner to a term of 37 months imprisonment at Count One at Criminal No. 07-398, to run concurrently with the term imposed at Criminal No. 07-182. (*Id.*).  Petitioner also received concurrent terms of supervised release and was ordered to pay restitution. (*Id.*). Petitioner then appealed his sentence to the Court of Appeals for the Third Circuit. (Docket No. 93); *see also United States v. Ciocan*, 332 Fed. Appx. 773 (3d Cir. June 10, 2009)(not-precedential).

In his direct appeal, the Court of Appeals addressed Petitioner's contentions that (1) this Court erred in considering his foreign convictions in increasing his criminal history category, (2) he did not use "sophisticated means" for purposes of a guideline enhancement, (3) his plea agreement was not knowing and voluntary, and (4) that the Court violated Article 36(1)(b) of the Vienna Convention on Consular Relations and Optional Protocol on Disputes. *Ciocan*, 332 Fed. Appx. at 776.  The Court of Appeals affirmed the Court's judgment and sentence. *Id.*  In so ruling, the Third Circuit found that upon review of the entire record, including the Court's "extensive plea colloquy," Petitioner had knowingly and voluntarily pled guilty, despite his argument that his plea was not knowing and voluntary because the Court failed to apprise him of his rights to be represented by

4

counsel at all stages of the proceedings and to compel the attendance of witnesses. *Id.* Of note, the appeals court held that this Court "adequately informed Ciocan of his rights, and Ciocan indicated that he understood them." *Id.*[2]

Petitioner filed the pending *pro se* motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 on February 8, 2010. (Docket No. 123). Petitioner claims that his sentence should be vacated, alleging that his counsel was ineffective, and the Court erred at sentencing in failing to grant him downward departures for exceptional remorse and pretrial conditions. (*Id.*). Subsequently, on February 9, 2010, the Court entered an Order pursuant to *United States v. Miller*, 197 F.3d 644 (3d Cir. 1999), advising Petitioner that all federal constitutional claims must be included in a single habeas corpus petition and of his right to: (1) withdraw the pending petition and file one new, all-inclusive § 2255 petition setting forth every ground which may entitle him to relief from the conviction and sentence, provided that such motion is filed within the one year statute of limitations; (2) amend the § 2255 petition presently on file with any additional claims or materials within 120 days; or (3) choose to have the petition ruled on as filed. (Docket No. 126). That same day, the Government filed a Motion to Dismiss the petition on the basis that Petitioner waived his right to file same in his plea agreement. (Docket No. 128).

Petitioner filed a response to the Court's February 9, 2010 Order with the Clerk of Court on

---

[2]
      It has been held by the Court of Appeals for the Third Circuit that a section 2255 motion generally "may not employed to relitigate questions which were raised and considered on direct appeal." *United States v. DeRewal*, 10 F.3d 100, 105 (3d Cir. 1993)(quotation omitted). Petitioner has raised new arguments in his petition; therefore, the Court is not barred by *Rewal* in addressing the petition. *C.f. United States v. Cole*, Civ. A. No. 09-198, 2010 U.S. Dist. LEXIS 15072 (W.D. Pa. Feb. 22, 2010).

      Arguably, the doctrine of collateral estoppel could apply to the Third Circuit's ruling that Petitioner's guilty plea was knowing and voluntary, generally, as the Court "adequately informed [him] of his rights." *Ciocan*, 332 Fed. Appx. at 776; *Ingram v. Lupas*, Civ. A. No. 09-1688, 2009 U.S. App. LEXIS 25788, at *5-6 (3d Cir. Nov. 24, 2009)(doctrine of collateral estoppel generally precludes a party from re-litigating issues or claims that have been adjudicated). However, because the Court of Appeals did not specifically discuss the validity of Petitioner's waiver of his collateral attack rights, the Court will consider the same herein.

March 10, 2010, asserting that he wished to proceed with his motion to vacate, as previously filed. (Criminal No. 07-398, Docket No. 33).[3] No further briefing has been received by the Court nor requested by the parties. Accordingly, Petitioner's and the Government's motions are fully briefed and ripe for disposition.

### III.   Legal Standard

Petitioner filed the instant motion challenging his sentence under 28 U.S.C. § 2255(a), which provides that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. Thus, a criminal defendant "is entitled to relief only if he can demonstrate that he is in custody in violation of federal law or the Constitution." *Jackson v. United States*, Civ. A. No. 07-1525, 2008 U.S. Dist. LEXIS 105048 (W.D. Pa. Dec. 30, 2008)(citation omitted).

Generally, a district court must order an evidentiary hearing in a federal habeas case if a criminal defendant's § 2255 allegations raise an issue of material fact. *United States v. Biberfeld*, 957 F.2d 98, 102 (3d Cir. 1992). But, if there is "no legally cognizable claim or the factual matters raised by the motion may be susceptible of resolution through the district judge's review of the motion and records in the case," the motion may be decided without a hearing. *United States v.*

---

[3]
 Petitioner's March 10, 2010 response, dated March 3, 2010 was only filed at Criminal No. 07-398. (Docket No. 33). He did not file a response at Criminal No. 07-182. The Court's order in both cases indicated that if no written notification is received from Petitioner within 30 days the Court will proceed to decide upon the petition as filed. (Docket No. 126). Nevertheless, the Court will accept Petitioner's response filed at 07-398 as filed at 07-182. The Court also notes that Petitioner's failure to file at both numbers has no bearing on the Court's resolution of the pending motion as Petitioner indicated in his response filed at 07-398 that he wished to proceed with his motion as filed.

*Costanzo*, 625 F.2d 465, 470 (3d Cir. 1980).  If a hearing is not held, the district judge must accept the criminal defendant's allegations as true "unless they are clearly frivolous on the basis of the existing record."  *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989); *see also* Rules Governing § 2255 Proceedings, Rules 4 and 8.

In order for a district court to correct a criminal defendant's sentence pursuant to a § 2255 motion to vacate, it must find "that . . . judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the [defendant] as to render the judgment vulnerable to collateral attack."  *Garcia v. United States*, Crim. A. No. 93-536-03, Civ. A. No. 97-2861, 2008 U.S. Dist. LEXIS 29298, at *4 (D.N.J. Apr. 9, 2008) (internal quotation and citation omitted).  A criminal defendant bears the burden of establishing his entitlement to § 2255 relief.  *United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005).  Moreover, as a § 2255 motion to vacate is a collateral attack on a sentence, a criminal defendant "must clear a significantly higher hurdle than would exist on direct appeal" to obtain relief.  *See United States v. Bohn*, Crim. A. No. 92-61-02, 1999 U.S. Dist. LEXIS 18522, at *7 (E.D. Pa. Nov. 9, 1999) (quoting *United States v. Frady*, 456 U.S. 152, 166 (1982)).

## IV.    Discussion

Petitioner filed the instant motion to vacate his sentence under 28 U.S.C. § 2255, asserting ineffective assistance of counsel, and that he is entitled to downward departures. (Docket Nos. 123, 124).  In response, the Government moved to dismiss Petitioner's motion on the basis that he knowingly and voluntarily waived the right to file a motion to vacate his sentence under 28 U.S.C. § 2255 in his plea agreement with the Government and that enforcement of the waiver would not result in a miscarriage of justice.  (Docket No. 128).

It is well-settled that "[c]riminal defendants may waive both constitutional and statutory rights, provided they do so voluntarily and with knowledge of the nature and consequences of the waiver." *United States v. Mabry,* 536 F.3d 231, 236 (3d Cir. 2008)(citations omitted).  A criminal defendant may effectively waive the right to file a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 in a plea agreement with the government.  *Mabry*, 536 F.3d at 241; *see also United States v. Khattak*, 273 F.3d 557, 561 (3d Cir. 2001)("[t]he ability to waive statutory rights ... logically flows from the ability to waive constitutional rights.").  The determination of whether the waiver is effective is a threshold issue and, if the waiver is effective, a criminal defendant is jurisdictionally barred from pursuing the habeas petition.  *Mabry*, 536 F.3d at 242.  A district court must determine the validity of the waiver by "specifically examining the (1) knowing and voluntary nature, based on what occurred and what defendant contends, and (2) whether enforcement would work a miscarriage of justice." *Id*. at 237.  A criminal defendant has the initial "burden of presenting an argument that would render his waiver unknowing or involuntary" but the district court "has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it." *Mabry*, 536 F.3d at 237-38 (citing *Khattak*, 273 F.3d at 563).

Here, Petitioner asserts that his "argument must prevail because he did not fully appreciate the consequences of his plea as required by Federal Rule of Criminal Procedure 11, and the government failed to comply with the plea agreement." (Docket No. 124 at 8). The Government responded by moving to dismiss the petition on the grounds that Petitioner waived his right to file the same. (Docket No. 128).  For the reasons discussed below, the Court finds that Petitioner's motion is without merit, and further, he knowingly and voluntarily waived the right to file such a motion.

8

**A.      Knowing and Voluntary Nature of the Waiver**

At the outset, the Court recalls that Petitioner obtained his high school diploma in 1995, has job training, and has no history of mental or emotional problems. (*Transcript of Sentencing Hearing held on 4/15/08*; Docket No. 130 at 60-61). The record also demonstrates that Petitioner successfully perpetrated numerous fraud offenses in the United States and Canada, which were both sophisticated and calculated in nature. (*Id.* at 60); *Ciocan*, 332 Fed. Appx. at 776 n.3.

Turning to the written plea agreement (Docket No. 60), the Court notes that the language of the same is clear and unequivocal, providing, in pertinent part, that "Vasile Ciocan [] waives the right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence." (Docket No. 60 at ¶ A.7). Petitioner and his counsel executed the plea agreement, thereby acknowledging that he read the document, discussed it with his attorney and accepted its terms. (*Id.* at 5-6).  The Court finds the terms of the plea agreement to be sufficient and clear to the waiver of collateral attack rights.

The Court must next review the sufficiency of the change of plea colloquy on December 7, 2007. (Docket No. 58; Docket No. 129). After Petitioner was placed under oath, the Court questioned Petitioner as to his understanding of the English language, as Petitioner is from Romania and was a citizen of Canada at that time. (Docket No. 129 at 2-4). Petitioner affirmed that he understood the English language, and thus, an interpreter was not needed. (*Id.*).[4] Further, the Court advised Petitioner that if he did not understand what was being said, to notify the Court. (*Id.* at 5-6). Petitioner affirmed that he understood. (*Id.*).  Petitioner also affirmed that he graduated from high

---

[4]

Upon questioning the Petitioner, the Court observed that Petitioner understood English. (Docket No. 129 at 4-5; Docket No. 130 at 60-61).

school in Canada. (*Id.* at 6-7). Accordingly, the Court determined he was competent to plead. (Docket No. 129 at 8). Moreover, in his petition, Petitioner does not assert that he was unable to understand what was being said nor did he assert the same in his direct appeal to the Court of Appeals for the Third Circuit. (Docket Nos. 123, 124; *see also* Docket No. 122-1).

In response to the Court's further questions, Petitioner answered affirmatively that he had ample opportunity to discuss his case with his attorney and that he was satisfied with the job his attorney had for him. (Docket No. 129 at 8). On this point, Petitioner confirmed that his counsel had discussed all the charges with him and that he understood them. (*Id.* at 9).  He had no questions about the charges for either the Court or his counsel. (*Id.* at 11). The Court then explained to Petitioner what his rights would be if he went to trial. (*Id.* at 11-14). All of the charges were read to Petitioner, and the Court explained what the Government would have to prove at trial with respect to each charge. (*Id.* at 9-10, 12-14). The Court also explained the statutory penalties to which the Petitioner would be subject, as well as the Court's obligation to consider the advisory sentencing guidelines range in imposing a sentence. (*Id.* at 21-23, 27).

Next, the Court directly questioned Petitioner regarding the plea agreement, including whether he had: read the plea agreement; understood its contents; reviewed it with his counsel; asked his counsel any questions about the agreement and if his counsel had answered any such questions; and, affixed his signature to the final page.  (Docket No. 129 at 15-16, 19-20).  Petitioner answered affirmatively to all of the Court's questions.  (*Id.*).  Government counsel then reviewed the salient terms of the plea agreement on the record, specifically stating that the Petitioner agreed to waive his right to file a motion to vacate sentence pursuant to 18 U.S.C. § 2255 and his right to take a direct appeal, subject to limited exceptions. (*Id.* at 17-18). Upon further questioning by the Court, Petitioner asserted that he agreed with the terms of the plea agreement, as stated.  (*Id.* at 19).

At the Court's request, Government counsel next set forth the elements of the offenses charged at Counts Two and Three at Criminal No. 07-182 and Count One at Criminal No. 07-398, and the factual basis supporting Petitioner's plea of guilty to those counts. (Docket No. 129 at 29-30, 33-35). Petitioner responded affirmatively when questioned if he agreed with the Government's description of his criminal conduct and asserted that he still intended to plead guilty to all three counts at the two criminal numbers. (*Id.* at 35). Petitioner's counsel, William Schmalzried, Esquire, affirmed that the entry of a guilty plea by Petitioner was consistent with his advice. (*Id.*). In addition, Petitioner stated that he was not forced to plead guilty, that no one had made any predictions or promises that induced him to plead guilty, and that no one had made any kind of a prediction or promise regarding what his actual sentence may be. (*Id.* at 31-32). Petitioner also acknowledged that he had discussed the potential application of the sentencing guidelines in his case with counsel, but asserted that neither Mr. Schmalzried, Government counsel, the Court, nor anyone else had made any promises to him regarding what his actual sentence would be. (*Id.* at 32). Petitioner also stated that he fully understood everything that was being discussed during the change of plea hearing, that he did not have any physical or mental illness which affected his ability to understand the proceedings or affected the voluntary nature of his plea and that he was satisfied in all respects with the advice and representation of Mr. Schmalzried. (*Id.* at 4-5, 7-10). After again being informed of the charges at Counts Two and Three at Criminal No. 07-182 and Count One at Criminal No. 07-398, Petitioner changed his plea to guilty, he and Mr. Schmalzried executed the change of plea form, and the Court accepted Petitioner's guilty plea, specifically finding that his plea was knowingly and voluntarily made. (*Id.* at 35-37; *see also* Docket No. 58).

On December 15, 2008, over a year after the change of plea hearing in this matter, the Court of Appeals for the Third Circuit's decision in *United States v. Corso* was handed down. There, the

court held that under Federal Rule of Criminal Procedure 11(b)(1)(N), a district court, and not the government, is required to inform a defendant that he is waiving the right to collaterally attack his sentence with a § 2255 motion. 549 F.3d 921, 929 (3d Cir. 2008); *see also Jackson v. United States*, 2008 U.S. Dist. LEXIS 105048, 2008 WL 5429695, *12 (W.D. Pa. Dec. 30, 2008).  Given this ruling, one could argue that the plea colloquy in this case did not conform to the requirements of Rule 11, as  the Government, and not the Court, informed Petitioner of the waiver of his collateral attack rights. (Docket 129 at 17-18). However, the Court notes that prior to *Corso*, the type of colloquy utilized in this case was considered "thorough and proper." *United States v. Jackson*, 523 F.3d 234, 243 (3d Cir. 2008); *see also United States v. Goodson*, 544 F.3d 529, 539 (3d Cir. 2008); and *United States v. Williams*, Crim. No. 08-1028, 2009 U.S. Dist. LEXIS 63700 (W.D. Pa. July 26, 2009). Moreover, a Rule 11 violation does not necessarily render a waiver provision invalid. Instead, "[i]if the safeguard required by Rule 11 is missing, the record must reveal an adequate substitute for it, and the defendant must show why the omission made a difference to him." *United States v. Sura*, 511 F.3d 654, 662 (7th Cir. 2007). Accordingly, a petitioner may succeed under *Khattak* only if his substantial rights were affected by the error. *Corso*, 549 F.3d at 929.  Under this requirement, a petitioner must show that a reasonable probability existed that the error "precluded him from understanding that he had a right to [collateral attack] and that he had substantially agreed to give up that right." *Id.*

In this case, the Court specifically addressed Petitioner's waiver of appeal rights (Docket No. 129 at 19), but did not specifically inform him of the waiver of the right to collaterally attack his sentence. Instead, the Government's attorney reiterated that Petitioner was waiving this right in his plea agreement. (Docket No. 129 at 17-18).  The Court then asked Petitioner if he understood and agreed with these terms, to which he answered in the affirmative. (*Id.* at 19). In light of this record,

and for the foregoing reasons, the Court finds that any deficiency in the plea colloquy did not affect Petitioner's substantial rights. *Corso*, 549 F.3d at 929.

First, there was an adequate substitute for the omission. The Government's attorney specifically set out the waiver on the record. (Docket No. 129 at 17-18). Petitioner stated that he heard the description, and that it correctly represented his agreement with the Government. (*Id.*) The Court confirmed that Petitioner understood the proceedings, and that he had discussed the plea with his attorney. (*Id.* at 19-21). To this end, Petitioner acknowledged that he has no difficulty reading, writing, or understanding the English language, and as previously noted, had received a high school education. (*Id.* at 5-8). Additionally, Petitioner and his counsel signed the acknowledgment on his plea agreement, which contained the waiver. (Docket No. 60 at 5). These facts evidence an adequate substitute for the Court's personal discussion, during the colloquy, of the collateral attack waiver. *See United States v. Goodson*, 544 F.3d 529, 540-41 (3d Cir. 2008).

Moreover, Petitioner has not demonstrated that the omission "made a difference." (*See* Docket No. 124). Indeed, he does not claim that he was unaware of the waiver, or that he would not have pleaded guilty had the Court, rather than the Government, stated the waiver on the record. Therefore, even if a Rule 11 violation had affected Petitioner's substantial rights, he would be obliged to demonstrate that the same "seriously affected the fairness, integrity, or public reputation of the judicial process," *United States v. March*, No. 08-1800, 336 Fed. Appx. 218, 220-21, 2009 U.S. App. LEXIS 15009, at *7 (3d Cir. July 8, 2009), which Petitioner has not done.  Moreover, the present record does not establish that Petitioner's substantial rights were affected, especially in light of his understanding that he waived his appellate rights, which the Court of Appeals found to be knowing and voluntary, *Ciocan*, 332 Fed. Appx. at 776,  and the binding collateral attack provision in the plea agreement. *See Goodson*, 544 F.3d at 541 (finding that deficient plea colloquy did not

13

preclude the defendant from understanding that he had waived his appellate rights, and holding that the defendant's substantial rights were not affected by inadequate colloquy). For these reasons, the deficient plea colloquy does not render Petitioner's collateral attack waiver unenforceable.

In conclusion, based on the plea agreement and the transcript of the change of plea hearing, the Court finds that Petitioner knowingly and voluntarily waived his right to collaterally attack his sentence under § 2255 and that this waiver is enforceable.

### B.      Miscarriage of Justice

The Court also has an affirmative duty to consider "whether enforcement [of the waiver] would work a miscarriage of justice" based on the underlying facts. *Mabry*, 536 F.3d at 237.  In so doing, the Court must apply "a common sense approach in determining whether a miscarriage of justice would occur if the waiver were enforced," and consider "'the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.'" *Id*. at 242-43 (citations omitted).  In *Mabry*, the Court of Appeals cited specific examples of instances that may constitute a miscarriage of justice including if enforcing a collateral attack waiver would bar a criminal defendant's appeal on grounds expressly preserved in the plea agreement or if counsel was ineffective in negotiating the very plea agreement which contained the waiver.  *Id*. at 243 (citing *United States v. Shedrick*, 493 F.3d 292, 303 (3d Cir. 2007); *United States v. Wilson*, 429 F.3d 455 (3d Cir. 2005)).  Based on the record in this case and for the following reasons, the Court finds that enforcing the collateral attack waiver will not work a miscarriage of justice.

First, Petitioner had the opportunity to appeal and as noted above, did in fact appeal his sentence to the Court of Appeals for the Third Circuit concerning issues that were not preserved in

his plea agreement. *Ciocan*, 332 Fed. Appx. at 776; *see United States v. Shedrick*, 493 F.3d 292, 303 (3d Cir. 2007). On appeal, he challenged the "sophisticated means" guideline two-level enhancement, as well as this Court's consideration of his foreign convictions in increasing his criminal history category. *Ciocan*, 332 Fed. Appx. at 775; (Docket No. 81 at 5-6). The Court of Appeals found both of these challenges to have been knowingly and voluntarily waived by Petitioner in his plea agreement. (*Id.*). In addition, despite Petitioner's contention that his plea was not knowing and voluntary, the Court of Appeals dismissed that argument as lacking in merit. *Id.* at 776. In so ruling, it held that this Court adequately informed Petitioner of his rights and that he knowingly and voluntarily pled guilty to the offenses charged. *Id.* at 776.

Second, like the defendant in *Mabry*, Petitioner has "not identified any nonfrivolous ground, not covered by the waiver, for a direct appeal or collateral attack" in his motion. *Mabry*, 536 F.3d at 243.  Instead, Petitioner has advanced the following arguments: (1) his counsel was ineffective by failing to advise him that the Court would consider his Canadian convictions; (2) that the Court's consideration of his prior convictions violates the double jeopardy clause; (3) that he should be awarded a downward departure for exceptional remorse; and (4) that he should be awarded a downward departure because of his pretrial conditions. (Docket No. 124 at 7). He also cites other "multiple factors" in support of his request for collateral relief, without identifying the same. (*Id.*). The valid waiver in Petitioner's plea agreement prevents this Court from ruling on the merits of these arguments. *See Mabry*, 536 F.3d at 237 n. 3 (citing *United States v. Gwinnett*, 483 F.3d 200, 203 (3d Cir. 2007)). However, the Court would note the following.

As to Petitioner's claim that he was unaware that the Court could consider his prior Canadian convictions, the Court finds that this contention is not credible and belied by the record. This issue was thoroughly litigated. (Docket No. 129; Docket Nos. 69, 78, 81). At the change of plea, the Court

requested estimates as to the applicable guidelines range from counsel. (Docket No. 129 at 27-28). The Government declined to give the Court such an estimate, citing too many unknown variables in Petitioner's case which could affect the guidelines range, particularly the effect of Petitioner's Canadian convictions. (*Id.* at 28). Defense counsel agreed with the Government's assessment. (*Id.*). Mr. Schmalzried affirmed that he had discussed a potential sentence with Petitioner and that he "used many variables" in calculating Petitioner's criminal history category and guidelines range, noting that "there were five different levels that are potentially possible." (Docket No. 127 at 28). Moreover, in response to the Court's questions, Petitioner asserted that he understood that the guidelines range could not be calculated at that time and that the sentence imposed might be different from any kind of sentence that either Petitioner had in mind at that time or that his attorney may have suggested to him. (Docket No. 129 at 27). He later asserted that no predictions or promises were made as to what his actual sentence would be (*id.* at 31-32), and after conferring with his counsel, Petitioner also asserted that nothing the Court had said during the change of plea suggested what his actual sentence would be. (*Id.* at 32). Therefore, Petitioner was plainly aware of the potential consequences of the Canadian convictions prior to his pleading guilty.

Additionally, Petitioner's Canadian convictions were thoroughly litigated prior to and during the sentencing hearing. In his presentence investigation report ("PIR"), the Probation Office noted that Petitioner's foreign convictions were not counted for purposes of his criminal history score, but may be considered under guidelines § 4A1.3. The PIR listed Petitioner's seven prior Canadian convictions. In his Response to the PIR, Petitioner raised various factual objections to the convictions and argued that an upward departure under § 4A1.3, resulting in a criminal history category of five, would be "excessive." (Docket No. 78 at 3-4). In its Position with Respect to Sentencing Factors, the Government stated its intention to seek an upward departure under § 4A1.3

to a criminal history category of five. (Docket No. 69 at 1-2). In the Addendum to the PIR, the Probation Office recommended that the Court consider Petitioner's foreign convictions and stated that an upward departure appeared to be warranted. In his response to the Addendum, Petitioner agreed that foreign convictions may be considered by the Court under U.S.S.G. § 4A1.3. (Criminal No. 07-398, Docket No. 11 at ¶ 6). The Court addressed Petitioner's foreign convictions in its Tentative Findings and Rulings and noted that under § 4A1.3, the Court may consider the same in addressing the Government's request for an upward departure. (Docket No. 81 at 7-8). At the sentencing hearing, Petitioner acknowledged that he read and understood the Court's Tentative Findings and Rulings, and affirmed that he had no questions for the Court or his counsel regarding the same. (Docket No. 130 at 7-8). Aside from Petitioner's objection to any reference to his involvement in Romanian organized crime, he did not raise any other objections to the Tentative Findings and Rulings. (*Id.* at 11). In light of this record, Petitioner's argument that his counsel was ineffective in failing to inform him of the Court's potential consideration of his Canadian convictions is unavailing.

As to Petitioner's argument regarding the double jeopardy clause, this argument likewise fails because the double jeopardy clause attaches only when it is shown that two offenses simultaneously charged are in law and in fact the same offense. *See United States v. Claxton*, No. 09-3155, 2010 U.S. App. LEXIS 3785, at *5 (3d Cir. Feb. 23, 2010)(quotation and citation omitted). An upward departure under § 4A1.3 does not violate the double jeopardy clause. *United States v. Belknap*, 113 F.3d 1242 (9th Cir. 1997). Petitioner's contentions that he should have been awarded downward departures for exceptional remorse and pretrial conditions are similarly without merit, as the Court had no such authority to depart under the Sentencing Guidelines. *See generally*, U.S.S.G. § 5K2, "Other Grounds for Departure;" *see also United States v. Sally*, 116 F.3d 76, 78-79 (3d Cir.

1997)(offender characteristics or other circumstances do not ordinarily warrant a sentence below the guidelines unless they are "extraordinary," but those situations are "extremely rare."). Finally, his argument concerning other "multiple factors" (Docket No. 124 at 7) is not only ambiguous and lacks any foundation in law, but is frivolous.

In sum, in addition to the fact that Petitioner's sentence did not exceed statutory limits nor did it exceed the Guidelines range, in this Court's estimation, the sentence imposed was reasonable under the factors set forth in 18 U.S.C. § 3553(a). (Docket No. 130 at 60-62).

The Court now turns to Petitioner's waiver of the right to raise the above challenges. The waivers agreed to by Petitioner in this case were broad and encompassed any challenge to his sentence by filing a motion to vacate and limited his right to file a direct appeal subject to narrow exceptions, i.e., if the United States appealed the sentence or conviction, if his sentence exceeded the statutory limits set forth in the United States Code or "if the sentence unreasonably exceeds the guideline range determined by the Court under the Sentencing Guidelines."  (Docket No.  60). However, Petitioner's waiver of his right to file a § 2255 motion contained no exceptions. (Docket No. 60 at ¶ A. 7). Further, Petitioner does not claim that his counsel was ineffective in negotiating the plea agreement at issue. (*See* Docket Nos. 123, 124); *see, e.g., United States v. Wilson*, 429 F.3d 455 (3d Cir. 2005)(stating that enforcing a waiver in connection with a coerced plea would work a miscarriage of justice, but then determining, based on the plea colloquy, that the plea was knowing and voluntary.). In fact, Petitioner affirmed at the change of plea hearing that he was satisfied with the job his counsel had done for him to date. (Docket No. 129 at 8).

Based on the foregoing, the Court finds that "enforcing the waiver is in line with justice, not a miscarriage of it," and the Court will not exercise jurisdiction over Petitioner's claims as he knowingly and voluntarily waived his right to file the instant motion and enforcing the plea

18

agreement would not result in a miscarriage of justice.[5]  *Id.* at 244.  As a result, the Court enforces the terms of the plea agreement and the Government's motion to dismiss is granted, and Petitioner's motion is denied, as moot.

## V.      Certificate of Appealability

Local Appellate Rule 22.2 of the United States Court of Appeals for the Third Circuit states that when a final order denying a motion under § 2255 is entered, the district court must determine whether a certificate of appealability should issue. As stated above, Petitioner has waived his right to file a § 2255 motion.  Further, there exists no basis for issuing a certificate of appealability, as Petitioner has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

## VI.     Conclusion

Based on the foregoing, the Government's Motion to Dismiss Petitioner's Motion (Criminal No. 07-182, [128]; Criminal No. 07-398, [32]) is GRANTED, and Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 (Criminal No. 07-182, [123]; Criminal No. 07-398, [27]) is DENIED, as moot.  An appropriate Order will follow in each case.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated:  March 18, 2010.

cc/ecf:  All counsel of record
cc:      Vasile Ciocan, 09411-068
         Moshannon Valley Correctional Center
         555 1 Cornell Drive
         Philipsburg, PA 16866

---

[5]
       As to Petitioner's waiver of his direct appeal rights, the Court of Appeals likewise held that based on the record of this case, there was nothing to suggest a "miscarriage of justice." *Ciocan*, 332 Fed. Appx. at 776.